McBRIDE, Judge.
This action was instituted against The Mississippi River Bridge Authority (sometimes hereinafter called "Authority”) to compel it to accord toll-free passage across the Greater New Orleans Bridge at New Orleans to any person belonging to the military forces of the State of Louisiana, his conveyance, and the military property of the State, when such person is in uniform or presents an order for duty, while going to or returning from any parade, drill, or meeting which such person may be required to attend. The plaintiffs are the then Governor of Louisiana, the Attorney General, and the Adjutant General, who are joined *313 by four individual members of the Louisiana National Guard who had been denied free passage across the bridge by representatives of the Authority although said persons at the time were in uniform and engaged on military business.
It is the contention of the plaintiffs that members of the National Guard are entitled to travel across the bridge without the payment of tolls under the provisions of LSA-R.S. 29:34 (source Acts 1940, No. 164, § 34), which provides:
“Any person belonging to the military forces of the state who is in uniform or who presents an order for duty shall be allowed free passage, for himself, his conveyance, and the military property of the state in his charge, over toll bridges and ferries while going to or returning from any parade, drill, or meeting which he is required to attend.”
After a trial on the merits, there' was judgment in favor of plaintiffs in conformity with the prayer of plaintiffs, from which judgment the Authority has appealed.
The petition and the amending and supplemental petition, as grounds for the relief sought, allege that the Adjutant General has control of the military forces of the State of Louisiana; that the National Guard is composed of certain Louisiana citizens who devote their time to drills, meetings, and parades, all of which is part of their duties; that the defendant, the Mississippi River Bridge Authority, determines and administers the policy of operation and generally operates the Greater New Orleans Bridge which provides a means by which vehicles of all types may cross the Mississippi River from a point near downtown New Orleans to a point on the west bank of the river in Algiers, and that the established toll for the passage of vehicles is 35^ per crossing; that the National Guard maintains armories in Plaquemines Parish on the west side of the river and at Jackson Barracks and on Moss Street in New Orleans on the opposite side; that in the course of their official duties in attending National Guard drills, meetings and parades held on the west side, members of the Guard who reside in New Orleans are required to journey by private vehicle across said Greater New Orleans Bridge, and those members of the National Guard who reside on the opposite side of the river are likewise required to cross, the bridge in order to attend such drills, meetings and parades as are held in New Orleans; that the representatives of the Authority have exacted tolls from the members of the National Guard who are entitled by the terms of LSA-R.S. 29 :- 34 to free passage and that denial of free passage to the members of the Guard inflicts grievous and irreparable injury upon them and has a detrimental effect upon their morale; that the Attorney General has advised the Authority that its denial and refusal of free passage, as aforesaid, is illegal and contrary to law, but notwithstanding this, the defendant has persisted in its denial and refusal to allow the free passage which members of the Guard are entitled to; that the four individual members of the Guard who appear as plaintiffs were denied free passage. The import of the prayer is that petitioners be granted an order compelling the Mississippi River Bridge Authority to permit the free passage across the Greater New Orleans Bridge, as aforesaid, and prohibiting the said defendant from denying or refusing the same.
Exceptions to the petitions were filed by defendant and overruled by the court; whereupon defendant answered setting forth that the Greater New Orleans Bridge has provided a new medium by which vehicles may cross the Mississippi River; it is admitted that the Authority has established a schedule of tolls and that the toll applicable to two-axle passenger vehicles is 350 per crossing, and in accordance with its Indenture and Deed of Trust dated November 1, 1954, no free use of the bridge is permitted except to officers or employees of the Authority in the discharge of their official duties, and to public police, fire, *314 and ambulance vehicles; that members of the Louisiana National Guard have other and adequate means of traveling to and from New Orleans since there are ferries crossing the river at Canal Street and Jackson Avenue as well as the Huey P. Long Bridge in Jefferson Parish; that the exaction of tolls from members of the Louisiana National Guard is not in contravention of any law and does not work irreparable injury to the members of the military forces of the State; that if plaintiffs had a right to maintain such an action as this, that right has prescribed by reason of the failure of plaintiffs to commence the suit within the period provided in Acts 1952, No. 7, § 6. The prayer is that the suit be dismissed.
The Mississippi River Bridge Authority, organized under Acts 1952, No. 7, as amended, known as the “Bridge and Ferries Authorities Act of 1952,” has for its sole purpose the acquisition, construction, operation and maintenance of toll bridges and ferries in order to improve and extend the highway system of the State of Louisiana in furtherance of the general public welfare. Section 5 of the act authorizes any Authority created pursuant to the provisions of the enactment to borrow money, make and issue negotiable notes, bonds, refunding bonds, or any other evidences of indebtedness or obligations of the Authority, and to pledge, hypothecate or otherwise encumber all or any of the receipts of the Authority as security for its obligations. Act 1952, No. 7, § 4(g) authorizes the Authority to fix, alter, charge and collect fares and tolls at reasonable rates to be determined exclusively by it for the purpose of providing for the payment of the expenses of the Authority, the construction, etc., of its facilities and properties, the payment of the principal of and the interest upon its obligations, and to fulfill the terms and provisions of any agreements made with the purchasers or holders of any such obligations. Acts 1952, No. 8, § 7, as amended, provides that the provisions of the act and of any contract entered into under the authority of the act shall constitute a contract between the State, the Department of Highways, and the Authority which is a party to such contract, and the holders of any bonds, notes, or other obligations of such Authority. This section further recites that the holder or holders of any such bonds, notes or other obligations may enforce the performance of such contract by appropriate action or civil proceedings.
In erecting the Greater New Orleans Bridge the Authority furnished an additional route to the general public for traversing the Mississippi River in the New Orleans area. The necessary funds for the construction of the bridge and the appendages thereto were obtained by the Authority through debt financing which required the securing of a loan of $65,000,000 and the making and issuing of bonds as evidence of such indebtedness and obligation in accordance with the terms contained in the Authority's bond Indenture and Deed of Trust, dated November 1, 1954. One of the covenants contained in the indenture and deed of trust is that the debt incurred for the construction of the bridge shall be liquidated from the revenues derived from tolls charged and collected for its use and that no reduction of tolls or free passage shall be allowed or permitted except as otherwise specifically authorized and provided for therein. Free passage for members of the Louisiana National Guard and their personal conveyances is neither authorized by nor stipulated in the indenture and deed of trust entered into by the Authority pursuant to Acts 1952, No. 7, which stands as a contract between the State of Louisiana, the Department of Highways, the Authority and its bondholders.
Acts 1952, No. 7, § 5, in authorizing the Authority to enter into any deeds of trust, indenture or other agreement for the security for bonds which it issues, may assign and pledge all or any of the revenues or receipts of the Authority thereunder, provided that the Authority shall have no power to mortgage or to create any lien *315 upon the properties operated or controlled by it. The further provision is made that such indenture or deed of trust or other agreement may contain such provisions as may be customary in such instruments or as the Authority may authorize. Acts 1952, No. 8, § 6, provides that neither the State of Louisiana, nor any subdivision thereof, shall interfere in any manner with the maintenance and operation of the bridge whether as to the tolls charged for the use thereof or otherwise, except insofar as may be necessary for the public safety. Appellant points out that Acts 1952, Nos. 7 and 8, each contain a repealing clause to the effect that all general or special laws or parts thereof which are in conflict with the acts are repealed to the extent of such inconsistency and are declared to be inapplicable to the provisions of the acts.
This brings to the fore the chief contention of the Mississippi River Bridge Authority which is that whereas LSA-R.S. 29:34 (source Acts 1940, No. 164, § 34) was repealed by implication because it is inconsistent with the powers granted to the Authority to fix toll passage on the bridge as it deemed necessary free of interference from any source, and that whereas the Authority contracted with the bondholders (Sec. 4.17 Indenture and Deed of Trust) that only employees of the Authority on official duty and public police, fire and ambulance vehicles would be excluded, members of the State’s military cannot be the beneficiaries of such toll-free passage. It is said any judgment exempting members of the National Guard from the payment of toll charges would be erroneous because in violation of Art. 4, § 15, Louisiana Const, of 1921, as amended, LSA, and also Art. 1, § 10 of the Constitution of the United States, thus constituting an abridgment of vested rights under the contract entered into between the Authority and the trustee of the bondholders.
The answering contention of plaintiffs is that LSA-R.S. 29:34 was not repealed expressly or by implication and regardless of the provisions of the bond indenture and deed of trust or the bonds themselves, the statutory exemption in favor of members of the National Guard from the payment of tolls was known to all parties concerned and that such statutory provisions must be read into the indenture and deed of trust and bonds as though the same were specifically set forth therein. Appellees further argue that the contract between the Authority and the bondholders must yield to proper exercise of police power, and further that in the absence of an intervention on the part of the bondholders the question of impairment of contract cannot be raised by the Authority.
It occurs to us that the ones most substantially interested in the determination of the question before the court are the bondholders from whose advances of funds the Greater New Orleans Bridge was constructed and to whom the receipts of the Authority are pledged as security for the bonds. Howsoever this court might decide the question posed, the rights of the bondholders would be directly affected and every penny’s worth of the $65,000,000 of bonds would be impressed with our judgment. For if plaintiffs are to prevail, the gross tolls paid by persons crossing the bridge would be lessened by noncollection of tolls from members of the National Guard and to that extent the gross tolls would be depleted and it is quite conceivable the rights of the bondholders might to some degree be impaired. Our humble opinion in this case is that the trustee of the bondholders should be impleaded in this suit so that any judgment by the court in these proceedings would be rendered only after contradictory proceedings with such bondholders. This case cannot proceed properly without their joinder.
 None of the parties hereto have raised any question of nonjoinder of the trustee for the bondholders, but the jurisprudence of the state is plainly to the effect that the court is bound ex officio to notice the lack of joinder of an indispensable party. Art. 646, LSA-C.C.P.; Succession of Todd, 165 La. 453, 115 So. 653; Thomas *316 v. Southdown Sugars, Inc., 237 La. 245, 110 So.2d 738. In such circumstances the case should be remanded to the lower court.
Therefore, for these reasons it is ordered, adjudged and decreed that the judgment appealed from be set aside and the cause is remanded to the lower court in order that the trustee or other representative of the bondholders may be joined as a party to the suit, and for such other further proceedings as the law and the nature of the case may require.
All costs are to await a final determination of the matter.
Judgment set aside and case remanded.